IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROSANNA CARTER | § | |
| v. | § | CIVIL ACTION NO. 6:12-CV-265 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

MEMORANDUM OPINION AND ORDER

On April 12, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), the case was assigned to the undersigned for disposition.

I.      HISTORY

Plaintiff previously received supplemental security income benefits pursuant to Title XVI based on disability as a child. *See* Transcript ("Tr.") at 13 (Administrative Law Judge ("ALJ") decision). Upon attaining age 18,[1] her eligibility for disability benefits was redetermined under the rules for determining disability for adults, as required under the Act. *Id*. at 13; *see* 20 C.F.R. § 416.987(a).. The Administration determined that she was no longer disabled as of February 1, 2009. Tr. at 13. The determination was upheld on reconsideration by a State Agency Disability Hearing Officer. *Id*. Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on September 15, 2010. *Id*. at 13, 24-28 (hearing transcript). Plaintiff appeared and testified,

_____

[1]      Plaintiff was born on April 23, 1990. Tr. at 21.

1

represented by counsel.  *Id.*   In addition, impartial vocational expert witness Talesia Beasley, and

impartial medical experts Drs. Howard McClure and Alvin Smith also testified.  *Id.*

The ALJ issued an unfavorable decision on December 7, 2010, *id.* at 10-23, and Plaintiff

sought review.  On January 9, 2012, the Appeals Council denied review.  *Id.* at 1.  Therefore, the

ALJ's decision became the Commissioner's final decision.  *See Sims v. Apfel*, 530 U.S. 103, 106-07,

120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).  Plaintiff then filed the instant action for review by this

Court.

## II.    STANDARD

Title XVI of the Act provides for supplemental security income for the disabled.  Judicial

review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is

limited to "determining whether the decision is supported by substantial evidence in the record and

whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d

431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v.*

*Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam).  A finding of no substantial evidence is

appropriate only where there is a conspicuous absence of credible choices or no contrary medical

evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707

F.2d 162, 164 (5th Cir. 1983)).  Accordingly, the Court "may not reweigh the evidence in the record,

nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the

evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th

Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391,

392 (5th Cir. 1985).  Rather, conflicts in the evidence are for the Commissioner to decide.  *Spellman*,

1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990));

*Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir.

1983)).  A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests

with the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security

Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough

that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271

Fed.Appx. 382, 383 (5th Cir.2003) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994)).

Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2)

diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the

plaintiff's age, education, and work history.  *Fraga v. Bowen*, 810 F.2d 1296, 1302, n.4 (5th Cir.

1987).  If supported by substantial evidence, the decision of the Commissioner is conclusive and must

be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize

the record and take into account whatever fairly detracts from the substantiality of evidence

supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may

remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence

into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482,

483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability.  *Wren v. Sullivan*, 925 F.2d

123, 125 (5th Cir. 1991).  The Act defines "disability" as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022.  A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry.  *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475).  Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity.[2]  At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe.  At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I.  Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe.  Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work.  Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy.  20 C.F.R. § 416.920(b)-(f).  An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled."  *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates

_____

[2]       However, this step is not used in the redetermination of disability eligibility following the award of benefits as a minor.  *See* 20 C.F.R. § 416.987(b).

4

a presumption of disability.  *Id.*  The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work.  *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

The additional procedure for evaluating a mental impairment is set forth in 20 C.F.R. § 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  *Id.*, § 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  *Id.*, § 416.920a(d).  If the ALJ's assessment is "none" or "mild" in the first three categories above, and is "none" in the fourth category, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  *Id.*, § 416.920a(d)(1).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  *Id.*, § 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)] ." *Id.*, § 416.920a (d)(3), (e)(2).

## III.   ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his December 7, 2010, decision:

5

The claimant attained age 18 on April 22, 2008, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was found no longer disabled as of February 1, 2009, based on a redetermination of disability under the rules for adults who file new applications.

Since February 1, 2009, the claimant has had the following severe impairments: sensorineural hearing loss and anxiety (20 C.F.R. § 416.920(c)).

Since February 1, 2009, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

After careful consideration of the entire record, the undersigned finds that since February 1, 2009, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember and carry out simple instructions. The claimant can make simple work related decisions but cannot do work involving sustained verbal interaction. The claimant is able to deal with changes in a routine work setting.

The claimant has no past relevant work (20 C.F.R. § 416.965).

Since February 1, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).

The claimant's disability ended on February 1, 2009, and the claimant has not become disabled again since that date (20 C.F.R. §§ 416.987(e) and 416.920(g)).

Tr. at 15, 17, 21, 22. The ALJ determined that, based on a redetermination of Plaintiff's continuing eligibility for supplemental security income upon attaining age 18 under section 1614(a)(3)(H) of the Social Security Act, Plaintiff's disability ended on February 1, 2009, and Plaintiff has not become disabled again since that date. Tr. at 23.

## IV.    DISCUSSION AND ANALYSIS

Plaintiff alleges that her ability to work is limited by "Hearing impairment (from birth)." Tr. at 193 (Disability Report - Adult dated October 30, 2008). However, she alleges that she "[d]o[es]n't know" how her ability to work is limited *Id*. She has identified no new conditions or limitations in

her subsequent Disability Reports - Appeal (*see* Tr. at 205-12 dated March 24, 2009, and 232-39 dated March 30, 2010).

During the administrative hearing, Plaintiff testified she gets nervous because she has always been very sheltered. Tr. at 39. Being on her own causes her more fear. *Id*. She experiences some nightmares and sometimes has problems sleeping. *Id*. at 40. She has difficulty communicating with other people because of her deafness and use of sign language. *Id*. It makes her feel afraid that people do not understand her. *Id*. She has problems understanding verbal sentences. *Id*. When she uses sign language, she does not actually make sentences, but communicates through symbols and concepts. *Id*. at 41. She was not sure whether she was fearful because of the need to please her parents. *Id*. She testified she sometimes experiences fear and anxiety all day long. *Id*. She experiences panic attacks, brought on from worry and being afraid to go out in the world. *Id*. at 42. However, she believes she could communicate adequately in an emergency situation. *Id*. When she has panic attacks, she gets pain in her chest, she cannot breathe and her heart pounds. *Id*. It sometimes happens at home and sometimes at college. *Id*. She calms herself with the Bible and prayer. *Id*. It takes 20-30 minutes to calm down from a panic attack. *Id*. at 42-43. She is not on any medication for her panic attacks specifically and only takes Tylenol in general. *Id*. at 43. She believes that it would be hard in a job setting if her employer needed to explain to her so she could understand what she needed to do. *Id*. She feels overwhelmed. *Id*. She is going to college, though at the time of the hearing, she was taking a year off due to financial aid availability. *Id*. at 44. She had taken English, math, reading and art appreciation, but received low grades. *Id*. At home, she cooks, cleans and feeds the pets. *Id*. She has no problems with headaches, reaching or mental acuity as a result of her trouble sleeping. *Id*. at 46.

When asked if there was anything else she thought the ALJ should know about, she responded, "No."
*Id.*

Plaintiff asserts three issues: (1) the ALJ's RFC mental finding is not supported by substantial evidence (Pltf Brf at 1, 3); (2) the ALJ erred in analyzing medical expert opinions by failing to refer to the testimony of medical expert Dr. Alvin Smith (*id*. at 1, 9); and (3) the ALJ erred at Step Five in his finding that Plaintiff retains the ability to perform other work existing in significant numbers in the national economy (*id*. at 1, 11).

### A.    The ALJ's Mental RFC Determination

Residual Functional Capacity, or RFC, is "the most the claimant can do despite an impairment and 'related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting.'" *See Bowie v. Astrue*, 262 Fed. Appx. 642, 644 n.3 (5th Cir. 2008) (per curiam) (brackets in *Bowie*, quoting 20 C.F.R. § 416.945(a)(1)); *see also* SSR 96-8p, 1996 WL 374184.  It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (quoting SSR 96-8p, 1996 WL 374184, at *1).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. (quoting SSR 96-8p, at *2).  "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. (quoting SSR 96-8p, at *3).  "RFC involves both exertional and nonexertional factors.  Exertional capacity involves seven strength demands: sitting, standing, walking. lifting, carrying, pushing, and pulling." *Id*. (citing SSR 96-8p, at *5).  Nonexertional limitations include work-related limitations and restrictions that do not depend on an individual's physical strength and the ALJ is to express nonexertional capacity in

terms of work-related functions.  *See Jackson v. Astrue*, 2011 WL 4843547, at *7 (N.D. Tex. Aug. 223,

2011) (citing SSR 96-8p, at *5; 20 C.F.R. § 416.969a(a)).  "An ALJ will discuss the claimant's ability

to perform sustained work activity on a regular and continuing basis and will resolve any

inconsistencies in the evidence."  *See Brown v. Astrue*, 2011 WL 4448719, at *3 (N.D. Tex. Sept. 22,

2011) (citing SSR 96-9p, at *7).

Regarding Plaintiff's RFC in this case, the ALJ determined that:

> . . . since February 1, 2009, the claimant has had the residual functional capacity to perform a
> full range of work at all exertional levels but with the following nonexertional limitations: the
> claimant is able to understand, remember and carry out simple instructions.  The claimant can
> make simple work related decisions but cannot do work involving sustained verbal interaction.
> The claimant is able to deal with changes in a routine work setting.

Tr. at 17.  However, Plaintiff contends that the ALJ cited the medical opinion of examining physician

Dr. Horton, giving it "great weight," Tr. at 21, but failed to incorporate all of Dr. Horton's findings

into his determination of mental RFC.  Specifically, the ALJ stated:

> Regarding the claimant's anxiety, the undersigned has given great weight to Dr. Horton the
> consultative examiner who opined that the claimant is limited in understanding and
> remembering detailed instructions, carrying out detailed instructions, interacting appropriately
> with the general public, maintaining socially appropriate behavior and responding to criticism
> from supervisors [ ].  His opinion is consistent with the opinion of the state examiner Murray
> Lerner, Ph.D., who opined that the claimant is able to perform simple tasks, interact with co-
> workers and supervisors and adapt to change and stress in a work environment [ ].  This
> opinion is consistent with the other state examiner Norvin Curtis, Ph.D., who opined that the
> claimant is able to understand, remember and carry out simple instructions, make simple
> decision, concentrate for extended periods of time, interact with others and respond to changes
> [ ].  Dr. Horton's opinion is also consistent with the opinion of Ms. Bonita Calhoun, the
> claimant's special education teacher who opined that the claimant's ability to express self-
> adequacy, initiate independent activities, exhibit organization in accomplishing tasks,
> completing tasks and making and keeping friends is average.  She opined that the claimant's
> ability to remember information just heard and retain instruction from week to week is above
> average.  She stated that the claimant's ability to respond appropriately to praise and correction
> is superior [ ].  These opinions are consistent with the record as a whole and with the objective
> medical evidence . . . .

Tr. at 21 (internal citations to record omitted); *see also* Tr. at 451-52.[3] Nonetheless, Plaintiff contends that the ALJ did not incorporate limitations he acknowledged from Dr. Horton into his assessment of mental RFC, including limitations on her ability to perform work requiring sustained verbal interaction or her ability to interact with the general public, coworkers or supervisors. Pltf Brf at 8-9. Additionally, she contends that the ALJ did not address Dr. Horton's opinion that she would "have extreme difficulty in obtaining competitive employment, and if she was able to, it would be very difficult for her to function in mainstream employment situations." *Id.* at 9 (citing Tr. at 452). She also observes that although the ALJ found the opinions of the non-examining State agency consultants consistent with Dr. Horton's findings, none of their assessments took place after Dr. Horton's second consultative examination and therefore could not have taken those findings into account. *Id.* Plaintiff's argument is misplaced.

During the administrative hearing, the ALJ discussed the findings above at length with both medical expert, Dr. Alvin Smith and vocational expert Talesia Beasley. During the examination of Dr. Smith, by both the ALJ and by Plaintiff's counsel, Dr. Smith reviewed in detail all of Dr. Horton's

---

[3] In his report of September 10, 2010, Dr. Horton opined, "It will be extremely difficult for [Plaintiff] to obtain competitive employment. If she does, it will still be very difficult for her to function at this time in mainstream employment situations." Tr. at 451. He explicitly opined that her limitations will include:

Understanding and remembering detailed instructions

Carrying out detailed instructions

Interacting appropriately with the general public

Maintaining socially appropriate behavior

Responding appropriately to criticism from a supervisor

*Id.* at 452.

findings, including those made during his second consultative examination of Plaintiff on September 10, 2010.  *See* Tr. at 30 (citing three consultative examinations, two by Dr. Horton and one by Dr. Reams; *see also* Dr. Horton's report, Tr. at 446-52.  Dr. Smith explained that Dr. Horton's test scores reflect an "auditory processing problem in that [Plaintiff's] verbal IQ scores tend to be significantly lower than her performance scores."  Tr. at 30.  Further,

> She's also developed some anxiety.  I think that she moved from the structure and the safety of the school and the home environment and to now having to interact with the world as an adult.  She's developed some nervousness.  There's more stimuli coming at her.  Her process and demands have increased and she's developed what's been labeled as an anxiety disorder.  [. . .] I do think she would have difficulty in situations where she has a verbal interactive demand on her in terms of job completion and I think if she has to interact on a frequent basis with others she's going to develop more nervousness to the point where it may affect her ability to sustain activity on an ongoing basis.

*Id*. at 31.  In response to the ALJ's questions, Dr. Smith opined that Plaintiff would have a moderate impairment in responding appropriately to supervision and coworkers.  *Id*.  He also opined she would have no impairment understanding, remembering and carrying out simple instructions.  *Id*. at 31-32.  He further opined she would have no impairment making judgments commensurate with the functions of unskilled work and simple work related decisions, *id*. at 32, and no problems with dealing with changes in a routine work setting.  *Id*.  Those opinions are wholly consistent with Dr. Horton's opinions of Plaintiff's anxiety-related limitations.

Following cross-examination of Dr. Smith by counsel, which did not modify the opinions related above, the ALJ took the testimony of vocational expert Talesia Beasley.  The ALJ led the examination by asking, "have you ever placed in work situations hearing impaired people?," to which the vocational expert responded, "Yes."  Tr. at 35.  The ALJ then asked for "an example of a job that

you have placed a hearing impaired person in," to which the vocational expert responded, "A collator's

position." *Id.*

The ALJ then posed a complete hypothetical question, specifically:

So, if we assume a hypothetical the same age, work experience, education as the claimant, who is - - has the ability for understanding, remembering and carrying out simple instructions, making judgments that are commensurate with the functions of unskilled work, i.e., simple work related decisions, has a moderate impairment in the ability to respond appropriately to supervision, coworkers in usual situations, and if I can make that more specific, specifically she's not able to do sustained verbal interactions. If a job like telemarketing would cause her anxiety and cause her to decompensate, so we would eliminate jobs that require sustained verbal interaction, and she would have no problem - - she has the ability to deal with changes in a routine work setting, so we're talking here in terms of like SVP:[4] 2 type of work that doesn't require a lot of verbal interaction with workers, supervision, general public, that kind of thing. Are there any jobs like that?

Tr. at 35-36. The vocational responded, "Yes, there are." Tr. at 36. She then identified the job of

collator, Dictionary of Occupational Titles ("DOT") code 208.685-010, light stress level,[5] and skill

level 2, with 2,545 jobs in Texas and 42,915 in the United States; and, envelope addresser, DOT code

209.587-010, sedentary stress level and skill lever 2, with 1,142 jobs in Texas and 24,803 jobs

nationally. Tr. at 36. She also testified she could name more occupations if necessary. *Id.*

Additionally, she stated that her testimony was consistent with the DOT and with the Selected

Characteristics of Occupations. *Id.* at 36-37. She amplified her testimony in response to cross-

examination by Plaintiff's counsel with regard to the level of interaction required with supervisors and

coworkers and that the work could be accommodated through the use of exchanged notes between

supervisor and impaired employee. *Id.* at 37-38.

---

[4]         Specific Vocational Preparation.

[5]         Although the vocational expert referred to "stress levels" during her testimony, it is clear in context that she was referring to the exertional work level of each job.

It is apparent that the RFC developed by the ALJ took all of Dr. Horton's opinions and limitations into account, were included in the RFC itself and were communicated to the vocational expert in the form of an appropriate hypothetical question.

With regard to Dr. Horton's opinions that "It will be extremely difficult for [Plaintiff] to obtain competitive employment.  If she does, it will still be very difficult for her to function at this time in mainstream employment situations," Tr. at 451, these opinions are in the category of issues reserved to the Commissioner.  *See* 20 C.F.R. § 416.927(d)(1); *Giles v. Astrue*, 2011 WL 2847449, at *5 (5th Cir. July 18, 2011) (per curiam); *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 656 (5th Cir. 2009) ("a doctor's conclusion that a social security disability applicant is 'disabled' or 'unable to work' is not a medical opinion entitled to deference, but rather a legal conclusion 'reserved to the Commissioner,'" citing and quoting *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam)); *Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989).  Dr. Horton is not a vocational expert and the ALJ was under no obligation to give any weight to his opinion as to whether Plaintiff is employable with her limitations.   Instead, the ALJ asked the appropriate expert, Ms. Beasley, detailed questions in that regard, including the existence of accommodations in the workplace for individuals with limitations such as Plaintiff.

Therefore, Plaintiff's first contention is without merit.

**B.      The ALJ's Medical Opinion Analysis**

Plaintiff next contends that the ALJ erred in his written decision by failing to cite the testimony of Dr. Alvin Smith, the testifying medical expert discussed above.  Plaintiff argues:

In evaluating the evidence of record, the ALJ failed to address the findings of Dr. Smith, thus violating SSR 96-6p and the regulations.  The undersigned recognizes that the ALJ has limited Plaintiff's RFC to reflect her inability to have sustained verbal interaction; however, it is

unclear from the decision whether this finding was based on Dr. Smith's testimony or, if he had properly evaluated the testimony, whether he would have limited Plaintiff's RFC even further. (Tr. 17). Therefore, this case must be remanded for further consideration of this opinion evidence.

Pltf Brf at 10-11. The Court does not agree with Plaintiff's assessment. Although it is true that the ALJ did not specifically cite Dr. Smith's testimony in his written decision, it is pellucidly clear from the transcript of the administrative hearing and the analysis citing it, above, that the ALJ examined Dr. Smith at length, considered his testimony carefully, understood that it incorporated and synthesized the opinion evidence presented by both Dr. Horton and Dr. Reams, and used it as a basis for his hypothetical question to the vocational expert as well as his written statement of Plaintiff's RFC.

As the Commissioner observes, "[t]hat the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence." Comm'r Brf at 7, quoting *Castillo v. Barnhart*, 151 Fed. Appx. 334, 335 (5th Cir. 2005) (per curiam) (citing *Falco*, *supra*, 27 F.3d at 163). Furthermore, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Plaintiff has not demonstrated any prejudice to a substantial right. At most, the ALJ's omission of specific citation to Dr. Smith's testimony amounts to harmless error, if that.

This contention is without merit.

## C.     The ALJ's Step Five Determination

Finally, Plaintiff contends that an inconsistency arose between the vocational expert's testimony and the DOT that invalidates the testimony. Specifically, Plaintiff contends that the occupations the vocational expert identified - collator and envelope addresser - each require Reasoning

Levels of 2, which she asserts is beyond the RFC as expressed in the hypothetical question posed to the vocational expert for performing "simple work." Pltf Brf at 12. There is no inconsistency.

The Court has affirmed that each of the jobs requires a Reasoning Level of 2. *See* DICOT 208.685-010, 1991 WL 671753 (G.P.O.); DICOT 209.587-010, 1991 WL 671797 (G.P.O.). Reasoning Level 2 requires the ability to "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* Dictionary of Occupational Titles, Appendix C. Despite Plaintiff's argument, however, an occupational Reasoning Level of 2 or below is within the ambit of "simple" type limitations. *See, e.g., Dugas v. Astrue*, 2009 WL 1780121, at *6 & n.14 (E.D. Tex. June 22, 2009); *Ashford v. Comm'r, Soc. Sec. Admin*, 2013 WL 821858, at *9 (E.D. Tex. Mar. 4, 2013). Therefore, both the collator and envelope addresser type occupations are within Plaintiff's RFC. On that basis, Plaintiff's final contention is without merit.

It is accordingly

**ORDERED** that the Commissioner's final decision is hereby **AFFIRMED** and this social security case is hereby **DISMISSED WITH PREJUDICE.**

So **ORDERED** and **SIGNED** this **28** day of **May, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

15